IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JOSE MARIA VILLATORO AVILA,      §
NO. A090968520,                  §
                                 §
              Plaintiff,          §
                                 §
v.                               §        CIVIL ACTION NO. H-12-2315
                                 §
KENNETH LANDGREBE, et al.,        §
                                 §
              Defendants.         §

## MEMORANDUM OPINION AND ORDER

Jose Maria Villatoro Avila, an immigration detainee at the Joe
Corley Detention Center, has filed a civil rights complaint against
Kenneth Landgrebe, Director, Removal and Detentions Operations for
the United States Immigrations and Customs Enforcement ("ICE");
Gary Goldman, Chief Counsel for the United States Department of
Homeland Security ("DHS"); John Morton, Director for ICE; and Eric
Holder (Original Complaint, Docket Entry No. 1).  For the reasons
explained below, this action will be dismissed.

## I.   Claims and Allegations

Villatoro Avila claims that he has been denied adequate
medical care in violation of his rights under the Constitution.
The medical care claim is based on alleged inadequate responses to
requests for dental and vision care.  He also complains that he has
been denied access to the courts.  In both his Original Complaint

(Docket Entry No. 1, pp. 3 and 4) and his More Definite Statement (Docket Entry No. 10, pp. 3 and 4), Villatoro Avila names Landgrebe, Goldman, Morton, and Holder as the defendants to his complaint.  He contends that Landgrebe, who is the director of the Joe Corley Center, is responsible for the facility's operations. Villatoro Avila names Goldman because he is Chief Counsel for ICE in Houston.  Morton is named because he is the Director of ICE. Holder is named because he is the United States Attorney General. All are sued in their official capacities (Docket Entry No. 10, p. 3).

Villatoro Avila also identifies John Hernandez, an ICE official, as a defendant in his more definite statement.  Id. at 2. Villatoro Avila contends that Hernandez intervened constantly in matters in which he filed grievances.  Villatoro Avila complains that Hernandez told him that he was creating a hostile environment by filing grievances and that he would give Villatoro Avila glasses if he would stop filing grievances (Docket Entry No. 10, p. 2). Hernandez is also alleged to be involved in the kitchen operations, and Villatoro Avila speculates that Hernandez removed detainees from their jobs if they challenged their immigration cases or filed grievances.  Id.

**A.    Dental Care**

Villatoro Avila states that his teeth are in bad condition and that a dentist at the Cameron County Detention Center had to pull

one of his molars in 2006 (Docket Entry No. 10, p. 19).   He was
later transferred to the Hidalgo Detention Center in La Villa,
Texas, where a dentist pulled a second molar in 2010 (Docket Entry
No. 10, p. 19).   He was subsequently moved to the Joe Corley
Detention Center where he submitted requests for replacement
molars, a root canal, fillings, and chipped tooth repair.   Id. at
4.   Villatoro Avila claims that he was told that the dentists at
Joe Corley only performed emergency procedures and that he was not
eligible for replacement molars.   Id. at 6.   However, he admits
that he was given several fillings.   Id. at 20.   He states that he
filed a grievance about his dental care and his response contains
the following chronology:

- The detainee arrived on 11/18/11 and was seen that day by dental.

- He placed a sick call on 1/20/12 for a call for a filling.  He was seen 01/20/12 by the dentist.  He wanted his teeth cleaned and complained of tooth #19 bothering him.  The dentist did some scaling around the tooth, gave some Tylenol for pain, and Peridex rinse to clean and remove food particles from around the tooth.   The detainee was reschedule[d] for filling placement.

- On 02/13/12 the detainee had a filling in tooth #19.

- On 03/23/12 the detainee put in another sick call for chipped teeth and 2 missing molars which he arrived to the facility with, he was schedule[d] to see the dentist on 03/27/12, but the detainee refused his appointment.

- On 04/05/12 the detainee put in a sick call for the above problem again.  He was seen by the dentist. The dentist told him he was ineligible for the

dental work the detainee was requesting such as bridges, crown work, etc...the dentist did fill tooth 21 and 22.

- On 4/13/12 the detainee placed a sick call for missing molars and was requesting a root canal or bridges. A written response was submitted back to the detainee stating that he was not eligible for replacement molars and did not require a root canal.

- The JDCF [sic] completes emergency dental care only.

Docket Entry No. 10, p. 5.

Villatoro Avila complains that he is entitled to additional services including bridge work and crowns. He admits that he can eat almost anything although he has bitten his inner cheeks while using his middle teeth to chew. Id. at 20. Villatoro Avila contends that he has experienced humiliation and discrimination due to his lack of dental care. Id. at 15.

**B.   Vision Care**

Villatoro Avila complains that he has been denied medical care for his vision. He alleges that he had been trying to obtain eyeglasses for reading since November of 2011 (Docket Entry No. 10, p. 6) although he admits that there is no record of such a request being made (Docket Entry No. 10, p. 6). He states that on January 17, 2012, he submitted a request to be seen by an optometrist. The medical staff responded the next day by telling Villatoro Avila that the request was "non-urgent" and that he needed to be in ICE custody continuously for one year before he

-4-

could be issued reading glasses. Id. He was also informed that he could purchase reading glasses at the commissary.

On March 23, 2012, Villatoro Avila sent another medical request for eyeglasses. Id. at 7. This time he declared that he had been in federal custody for two years and two months and that he could not wait an entire year to receive glasses (Docket Entry No. 10, p. 7). Although the court instructed Villatoro Avila to describe the problems with his vision as determined by a doctor, he provides no such information in his court ordered more definite statement. See id. at 6-7, 21. He alleges that John Hernandez, an ICE official, came to see him about his glasses on March 29, 2012. According to Villatoro Avila, Hernandez said that he would get him some glasses if he would stop filing grievances. Id. In spite of Hernandez's offer, Villatoro filed another grievance on May 7, 2012, complaining that he had been trying to obtain glasses with corrective lenses since November of 2011. His grievance was answered with the following statement, "we were awaiting confirmation from the medical department in regards to an eye appointment. It has been confirmed that you will be seen for an eye exam on June 4, 2012." Id.

Villatoro Avila states that he was provided glasses on or about June 15, 2012 (Docket Entry No. 1, p. 7). In total, he had to wait eight months before ICE gave him glasses. Id. at 21. He complains that he suffered pain and discomfort trying to read before he received the glasses (Docket Entry No. 1, p. 7). He

further alleges that the optometrist tested him for vision loss although he admits that he does not know if the delay harmed his eyes.  Id.

## C.    Access to Courts

Villatoro Avila complains about the limitations or lack of various services he claims that he needs to perform his legal work. He alleges that he was not allowed personal use of a copier, which is necessary to maintain the confidentiality of his legal work (Docket Entry No. 10, p. 7).  He alleges that he filed a grievance requesting that a copier be placed in the unit law library, but was told by the law library clerk that she did not have the authority to order a copy machine.  Id. at 7-8.  She also informed him that it was her job to make copies, assuring him that no one else would see his materials.  Id. at 8.  However, Villatoro Avila objects to the policy because he does not want the clerk to keep his materials for an extended time.  He filed another grievance on April 8, 2012, again requesting personal access to a copier in the library and stating that it is unlawful to keep his materials for several days. Id.  A week later, the grievance was denied, apparently by the warden, with the notation that Villatoro Avila needed to follow the established procedure if he wanted copies made.

Villatoro Avila complains about the policy of limiting him to ten free copies per week unless the warden grants permission.  Id. at 10.  He filed a grievance asserting that his family provided

meager financial support and that he needed additional copies because of his federal court proceedings.   The grievance was rejected based in part on the finding that Villatoro Avila worked in the kitchen for which he was paid.[1]   The response also indicated that Villatoro Avila could make additional copies even if he did not have funds and his inmate account would reflect a deficit for the excess copies (Docket Entry No. 10, p. 10).   Villatoro Avila complains that he only earns $3.00 per day and that his family sent the money so that he could treat himself to a candy bar or soda, not to pay his legal expenses.   When Villatoro Avila appealed the decision, the response stated that his inmate account record reflected that he was indulging in more than an occasional candy bar and that he would be charged for additional copies.   Id. at 11.

Villatoro Avila also complains that he has to pay postage for his legal mail.   Like his grievances regarding copies, the response from the officials was that he was not indigent due to his employment and the gifts from his family.   The response also noted that there were funds in his account.   Villatoro Avila repeated his protest that he was only paid $3.00 per day and that his family's money was for candy and soda, not legal expenses.   He argues that the finding that he is not indigent because he receives a meager salary and an occasional gift is akin to declaring that a homeless

_____

[1]Although the court has allowed Villatoro Avila to proceed as a pauper in this proceeding, his records indicate that he receives approximately $50 per month.   See Docket Entry No. 3.

person is no longer homeless when someone gives him money. Id. at
11, 13.

Villatoro Avila complains that he has not been allowed
sufficient time in the law library (Docket Entry No. 10, p. 13).
He alleges that he requested additional time to print out legal
information he needed (Docket Entry No. 10, p. 13). The law
library responded that it was necessary to make the library
available to detainees held by the United States Marshal as well as
those held by ICE and that the two groups could not be mixed. Id.
However, Villatoro Avila was also told than an accommodation would
be made if time permitted after the entire detainee population had
a chance to use the law library that week. On another occasion
Villatoro Avila sought additional library time stating that he had
only been allowed to use the library for less than three hours for
each of the previous three weeks. Id. at 14. The response
acknowledged that his designated time was from 2:00 p.m. to
5:00 p.m. each Monday. The library also repeated the need to
provide access to the entire population including females and those
placed in segregation, which could not be commingled. Villatoro
Avila alleges that he has been banned from the library because the
library clerk did not like his attitude. Id. He contends that the
staff provoked his alleged misbehavior.

Villatoro Avila also complains that the law library has an
incomplete collection. Id. at 15. He alleges that there is only
case law on immigration and none on habeas or civil law. He admits

-8-

that he did not exhaust the grievance process on this subject but claims that he did not file any grievances for fear of retaliation by ICE officials (Docket Entry No. 10, p. 15).  He also complains about the quality of the computers available to him at the library as well as his access to the LexisNexis network.  Id. at 23.

In response to the court's order for more definite statement, Villatoro Avila states that he was working on an immigration case and a § 2241 habeas case when he was allegedly denied access to the courts.  Id. at 22.  Although he alleges that he was substantially delayed in obtaining judicial review of his claims, he does not cite any instance in which a petition or complaint was dismissed or denied due to untimely filing.[2]  He only refers to his frustration with officials who make copies of his documents and his limited access to the law library and related resources.

## II.  **Analysis**

Although Villatoro filed this action as a suit under 42 U.S.C. § 1983, his pleading is actually a complaint filed pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 91 S.Ct. 1999 (1971), in which the Supreme Court recognized the right of individuals to assert claims for damages against federal officials in causes of actions similar to suits

---

[2]There are two actions filed by Villatoro Avila pending in the McAllen Division of the Southern District of Texas.  Villatoro Avila v. USA, No. 7:11cv150 (S.D. Tex); Villatoro v. Holder, No. 7:11mc025 (S.D. Tex.).

brought against state officials under 42 U.S.C. § 1983. <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1948 (2009); <u>Whitley v. Hunt</u>, 158 F.3d 882, 885 (5th Cir. 1998). Claims presented in <u>Bivens</u> actions are subject to standards comparable to those presented in actions brought under 42 U.S.C. § 1983. <u>Id.</u> Consequently, the plaintiff in a <u>Bivens</u> action must show that the defendants violated his constitutional rights. <u>Abate v. Southern Pacific Transp. Co.</u>, 993 F.2d 107, 110 (5th Cir. 1993).

Villatoro Avila named Landgrebe, Goldman, Morton, and Holder as defendants in this action due to their superior administrative positions. These defendants cannot be found liable because the doctrine of <u>respondeat superior</u> does not apply in civil rights actions. <u>Montoya-Ortiz v. Brown</u>, 154 F.App'x 437, 439 (5th Cir. 2005); <u>Cronn v. Buffington</u>, 150 F.3d 538, 544 (5th Cir. 1998); <u>Eason v. Thaler</u>, 73 F.3d 1322, 1327 (5th Cir. 1996). Villatoro Avila must show that the defendants were either personally involved in the alleged deprivations or that the policies they implemented were so deficient that they resulted in the deprivations. <u>Cronn</u>, 150 F.3d at 544. Allegations of isolated instances of deprivations alone do not support a liability claim based on a policy. <u>City of Oklahoma City v. Tuttle</u>, 105 S.Ct. 2427, 2436 (1985); <u>Bigford v. Taylor</u>, 834 F.2d 1213, 1220 (5th Cir. 1988).

There are no allegations of any policies promulgated by Landgrebe, Goldman, Morton, and Holder that injured Villatoro Avila. Therefore, these defendants cannot be held liable. <u>See</u>

-10-

Baker v. Putnal, 75 F.3d 190, 199 (5th Cir. 1996). Moreover, the doctrine of sovereign immunity acts as a bar against Bivens actions brought against federal employees in their official capacities. Gibson v. Federal Bureau of Prisons, 121 F.App'x 549, 551 (5th Cir. 2004), citing Correctional Services Corp. v. Malesko, 122 S.Ct. 515, 522 (2001); see also Hafer v. Melo, 112 S.Ct. 358, 361 (1991) (claims against employees in official capacities are considered a suit against the government entity they represent). In addition, Villatoro Avila has failed to assert facts that there was any deprivation of his federal or constitutional rights as will be explained.

**A.    Dental Care**

As a detainee Villatoro Avila has a constitutional right to basic, reasonable medical care. Jacobs v. West Feliciana Sheriff's Dep't, 228 F.3d 388, 393 (5th Cir. 2000); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987). A custodial official violates that right if he is deliberately indifferent to an inmate's serious medical need. Lawson v. Dallas County, 286 F.3d 257, 262 (5th Cir. 2002), citing Estelle v. Gamble, 97 S.Ct. 285, 291 (1976). A serious medical need is one that has been diagnosed by a doctor or health professional or a condition that is so obvious that even a layperson would recognize that medical care is required. Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

-11-

An inmate's right of access to medical care includes the right to see a dentist when the conditions of his teeth or gums have a serious affect on his health and well being.  Williams v. Mason, 210 F.App'x 389 (5th Cir. 2006), citing Farrow v. West, 320 F.3d 1235, 1239-41 (11th Cir. 2003); Wynn v. Southward, 251 F.3d 588, 593 (7th Cir. 2001).  In such cases, the inmates cannot chew or eat adequately due to the extreme poor condition of their dental health.  Id.  Often, they have few if any teeth left.  See Farrow, (only two teeth remaining); Huffman v. Linthicum, 265 F.App'x 162 (5th Cir. 2008) (only three teeth remaining); Wynn, 251 F.3d at 591 (prisoner unable to chew food without dentures which had been previously issued).  In contrast, Villatoro Avila has almost a full set of teeth, and he admits that he can eat most foods although he experiences some difficulty because of the two missing molars.

Villatoro Avila complains that his teeth have not been given adequate attention, but he admits that he has been seen by a dentist on several occasions and that he has had two or three fillings.  These facts rebut his allegations of deliberate indifference.  Hay v. Thaler, 470 F.App'x 411, 416 (5th Cir. 2012), citing Gobert, 463 F.3d at 346 n.24.  See also Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995); Mendoza v. Lynaugh, 989 F.2d 191, 193-95 (5th Cir. 1993).  An inmate cannot establish deliberate indifference by alleging that the defendants were unsuccessful treating him or that they were negligent.  Hay, 470

F.App'x 411, citing Gobert, 463 F.3d at 346.   See also Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

Villatoro Avila complains that he had planned on receiving crowns for his broken teeth along with braces or veneers before being detained by the authorities (Docket Entry No. 10, p. 20).   He contends that he is entitled to these services in addition to the molar replacements.   Id.   While an inmate has a right to basic medical services to treat serious physical needs, he does not have a right to the best possible care or care that is available to those who are not detained or incarcerated.   Shepherd v. Dallas County, 591 F.3d 445, 455 n.3 (5th Cir. 2009).   There is no right to services such as braces and veneers that serve only a cosmetic purpose.   See Blayne v. Flattery, 180 F.App'x 510 (5th Cir. 2006); Jackson v. Wharton, 687 F.Supp. 595 (M.D. Ga. 1988). Villatoro Avila has not shown that he has been denied dental services in regard to a serious health need.   His disagreement with the health officials over what is necessary is not actionable. Sama v. Hannigan, 669 F.3d 585, 590-591 (5th Cir. 2012). Therefore, this claim has no legal basis.

B.   **Vision Care - Glasses**

Villatoro Avila complains that he was denied glasses for eight months.   Denial of eyeglasses may constitute an act of deliberate indifference if it results in serious injury or loss of vision. See Koehl v. Dalsheim, 85 F.3d 86, 88 (2d Cir. 1996) (inmate

-13-

suffered double vision and loss of depth perception due to head injury which could have been remedied by prescription glasses). See also Newman v. Alabama, 503 F.2d 1320, 1331 (5th Cir. 1974). Glasses are necessary and must be issued when an inmate is blind and unable to function without them. See, e.g., Benter v. Peck, 825 F.Supp. 1411 (S.D. Iowa 1993); Williams v. ICC Committee, 812 F.Supp. 1029 (N.D. Cal. 1992) (Both inmates were legally blind.). However, failure to issue glasses does not support a civil rights claim where there is no showing of substantial harm or that the defendants were subjectively aware of the inmate's need. Thomas v. Owens, 345 F.App'x 892, 896 (5th Cir. 2009).  The fact that an inmate cannot see well without his glasses is not sufficient without a showing that he would suffer harm without them.  Id.

The plaintiff's vision in Benter was 20/400.  Benter, 825 F.Supp. at 1416.  Villatoro Avila fails to assert a specific acuity in response to the court's inquiry (Docket Entry No. 10, p. 21). He states that he has difficulty reading small text and that his blurry vision affects his daily life (Docket Entry No. 10, p. 21). He also complains that his eyes become irritated when he reads without glasses.  Id.  He admits that he was given glasses after eight months and fails to assert any harm resulting from the delay. The alleged delay in receiving the glasses is not actionable where there is no indication that Villatoro Avila was harmed by the delay.  Mendoza, 989 F.2d at 195.  Therefore, this claim has no legal basis.

## C.   Access to Courts

Villatoro Avila complains about the law library and copying services available to him at the Joe Corley Center.  He complains that he does not have direct access to a copier and that he is only allowed ten free copies each week.  He laments how he must choose between paying for extra copies or candy and soda.  A prison inmate or detainee has a right of access to the court system, and he must have access either to an adequate law library or to adequate legal assistance by trained personnel.  Bounds v. Smith, 97 S.Ct. 1491, 1498 (1977).  However, the "Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court."  Brewer v. Wilkinson, 3 F.3d 816, 821 (5th Cir. 1993), citing Wolff v. McDonnell, 94 S.Ct. 2963, 2984 (1974).  "In other words, Bounds does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims."  Lewis v. Casey, 116 S.Ct. 2174, 2182 (1996).

Villatoro Avila fails to show that being charged for copies is a violation of his rights because there is no free standing right to copies of legal work.  See Bonner v. Henderson, 517 F.2d 135, 136 (5th Cir. 1975).  See also Brinson v. McKeeman, 992 F.Supp. 897, 910 (W.D. Tex. 1997) ("access to typewriters and copy machines is not an essential part of the right of access to the courts").  Although free access to a copier would facilitate his work,

-15-

Villatoro Avila has failed to show he has been prevented from filing his pleadings. See In re Maxy, 674 F.3d 658, 661 (7th Cir. 2012). The extensive typewritten pleadings filed in this action alone belie his allegation that his efforts have been seriously impeded. Beck v. Lynaugh, 842 F.2d 759, 762 (5th Cir. 1988). The Joe Corley Detention Center provides Villatoro Avila his basic needs for food, shelter, and medical care. It is not unreasonable or unconstitutional to expect him to pay for some of the costs of preparing and filing his court cases. See Atchison v. Collins, 288 F.3d 177, 180-81 (5th Cir. 2002).

Villatoro Avila also fails to show how his rights are violated when a clerk holds his papers for copying. Busby v. Dretke, 359 F.3d 708, 721 (5th Cir. 2004). Courts have recognized the need for custodial authorities to open, review, and occasionally censor outgoing mail. Id. Villatoro Avila has presented no facts indicating that anyone read or tampered with his materials while copying them. Therefore, his complaint regarding the copies is baseless.

Villatoro Avila also complains about being charged for postage. Like his complaint about copies, Villatoro Avila fails to show how the postal charges have impeded his access to the courts. See Winn v. Department of Corrections, 340 F.App'x 757, 758 (3d Cir. 2009). While an indigent inmate has a right to mail his pleadings if he does not have the requisite funds, his custodian can seek reimbursement when the inmate receives funds. Id.;

-16-

Guajardo v. Estelle, 580 F.2d 748, 762-63 (5th Cir. 1978). Villatoro Avila admits that he has been receiving money from his family and his job. Although he compares himself to a homeless person, he is being provided food and shelter along with other basic services. He can be charged for postage if he has funds. See Atchison, 288 F.3d at 180-81.

Villatoro Avila complains that he does not have enough time in the library although he is allowed to visit for three hours every week. Some restrictions may be placed on an inmate's access to a law library. See Eason v. Thaler, 73 F.3d 1322, 1328 (5th Cir. 1996). Custodial officials may restrict the number of hours an inmate may spend in the library without violating his constitutionally protected right of access to the courts. Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999). There are other ways in which an inmate may be able to achieve meaningful access to the courts. Morrow v. Harwell, 768 F.2d 619, 623 (5th Cir. 1985). Villatoro Avila admits that he has been allowed to make copies of legal materials. He may take advantage of this privilege by copying statutory materials and case law for later study in the privacy of his cell.

Villatoro Avila complains about the materials and the computers at the library. An inmate does not have a constitutional right to use a computer for legal research even under seemingly compelling circumstances. See Wells v. Thaler, 460 F.App'x 303, 312-13 (5th Cir. 2012) (blind inmate's needs were met when he was

-17-

allowed to work with another inmate who could read to him in the library and assist him in preparing his pleadings). Villatoro Avila complains about the limited legal materials in the library, but he fails to specify how the alleged shortcomings prevented him from filing a complaint or petition challenging the conditions or the validity of his confinement. See Terry v. Hubert, 609 F.3d 757, 761-762 (5th Cir. 2010). Moreover, Villatoro Avila has not shown that his position as a litigant has been prejudiced by the library's perceived deficiencies. Brewster v. Dretke, 587 F.3d 764, 769 (5th Cir. 2009), citing Lewis 116 S.Ct. at 2180. His allegations regarding the restricted hours and the available resources at the library do not support an actionable claim because he does not demonstrate how it has impeded his work or prejudiced his position as a litigant. MacDonald v. Steward, 132 F.3d 225, 230-31 (5th Cir. 1998), citing Eason v. Thaler, 73 F.3d at 1328.

In addition to failing to assert a claim regarding the library's resources, Villatoro Avila admits that he did not file a grievance regarding the library. Before a prisoner can present a claim as to prison conditions in federal court, he must first exhaust prison administrative remedies that are available to him. 42 U.S.C. § 1997e. This applies to all aspects of prison life. Porter v. Nussle, 122 S.Ct. 983, 992 (2002). Villatoro Avila alleges that he failed to comply with the grievance requirement because he was afraid that retaliatory measures would be taken against him. However, he fails to present any facts substantiating

-18-

his fears and does not show that his grievances would subject him
to retaliation. <u>Jones</u>, 188 F.3d at 325. An inmate is not required
to exhaust administrative remedies if they are not available to him
due to intimidation and threats of retaliation. <u>Tuckel v. Grover</u>,
660 F.3d 1249, 1254 (10th Cir. 2011). However, he must show:
"(1) that the threat or intimidation actually did deter the
plaintiff inmate from lodging a grievance or pursuing a particular
part of the prison administrative process; and (2) that the threat
or intimidation would deter a reasonable inmate of ordinary
firmness and fortitude from lodging a grievance or pursuing the
part of the prison administrative process that the inmate failed to
exhaust." <u>Id.</u> Villatoro Avila's unsupported fears are not
sufficient to exempt him from the statutory administrative
exhaustion requirement contained in 42 U.S.C. § 1997e. <u>Singh v.</u>
<u>Lynch</u>, 460 F.App'x 45, 47-48 (2d Cir. 2012). Therefore, his claim
regarding the library is subject to dismissal because of his
failure to exhaust remedies as well as his failure to assert a
claim with any legal basis.

### D.   Retaliation (John Hernandez)

Villatoro Avila named only four defendants in his complaint:
Landgrebe, Goldman, Morton, and Holder. The complaint's primary
focus was the alleged deficiencies in medical services and court
access. However, Villatoro Avila also complained about John
Hernandez, who appears to be the only party who had personal

-19-

contact with Villatoro Avila.  Hernandez was apparently responding to the grievances filed by Villatoro Avila by meeting with him and attempting to persuade him to cease filing them.  Villatoro Avila characterizes Hernandez's statements as retaliation.  He also speculates that Hernandez removes inmates from their kitchen jobs if they file grievances or challenge their immigration cases.

Prisoners' and detainees' claims of retaliation are considered warily by the courts lest they become embroiled in the multitudes of disciplinary actions and grievances filed daily in the prisons, jails, and detention centers.  Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995).  To state a retaliation claim "'a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.'" McFaul v. Valenzuela, 684 F.3d 564, 578 (5th Cir. 2012), quoting Jones, 188 F.3d at 324-25.  Causation requires a showing that "'but for the retaliatory motive the complained of incident ... would not have occurred.'"  MacDonald v. Steward, 132 F.3d at 231, quoting Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997).

Hernandez apparently tried to talk Villatoro Avila out of filing grievances.  His only overt statement was a promise that he would see to it that Villatoro Avila got his glasses if he stopped filing grievances.  Although Villatoro Avila may have not received his glasses as soon as promised, he had no constitutionally protected right to receive them immediately.  Thomas, 345 F.App'x

at 896.  Hernandez cannot be held liable for failing to resolve a grievance to Villatoro Avila's satisfaction.  Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005).  Villatoro Avila also fails to assert a claim regarding his allegations that Hernandez may have removed some inmates from their kitchen jobs for filing grievances or immigration litigation.  An inmate's claims of retaliation must rest on more than mere speculations.  See Shelton v. Lemons, 486 F.App'x 395, 397-398 (5th Cir. 2012).  His personal belief is not sufficient to support a claim of retaliation.  Allen v. Jones, 458 F.App'x 408, 410 (5th Cir. 2012).  Villatoro Avila has failed to allege facts that support a claim of retaliation.

Villatoro Avila was granted permission to proceed as a pauper.  A prisoner complaint filed in forma pauperis may be dismissed if it is frivolous.  28 U.S.C. § 1915(e)(2)(B)(I).  Such a complaint is frivolous if it lacks an arguable basis in law.  Talib v. Gilley, 138 F.3d 211, 213 (5th Cir. 1998).  This complaint will be dismissed because it is frivolous.

### III.  Conclusion

1.  Plaintiff's Original Complaint filed under 42 U.S.C. § 1983 (Docket Entry No. 1) by Jose Maria Villatoro Avila (No. A090968520) is **DISMISSED** because it is frivolous.  28 U.S.C. § 1915(e).

2.  Plaintiff's requests for extension of time (Docket Entry Nos. 8 and 9) are **DENIED AS MOOT.**

3.  The Clerk shall send a copy of this Memorandum Opinion and Order to the parties and to Betty Parker, United States District Court, Eastern

-21-

District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas 75702.

Defendants' Motion for Enlargement of Time to File Answer (Docket Entry No. 16) is **DENIED AS MOOT**.

**SIGNED** at Houston, Texas, on this 29th day of March, 2013.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE